UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

## AFFIDAVIT

I, FBI Task Force Officer Jeremy Seeklander, being duly sworn, declare and state:

## TRAINING AND EXPERIENCE

1.     Your Affiant is a Task Force Officer (TFO) for the Federal Bureau of Investigation. I have been employed as a TFO with the FBI since November of 2021. I am currently assigned to the Minneapolis Division, Bismarck Resident Agency. My duties include, among other things, the investigation of narcotics offenses in violation of Title 21, United States Code, in the District of North Dakota.

2.     I am currently employed with the Bismarck Police Department and have been since October of 2009. My duties during this time have included enforcing all local and state traffic and criminal law. In 2014, I was transferred to the Investigations Division. I have conducted investigations involving crimes such as domestic abuse, assaults, rapes, homicides, and narcotics violations. During this time, I have conducted investigations of felony narcotics violations involving major drug distribution networks and traffickers that have mainly been based out of Bismarck. As an Investigator, I conducted multiple drug investigations that resulted in numerous federal narcotics-related indictments and prosecutions. I have used various investigative techniques, such as electronic and physical surveillance, interviews of witnesses and defendants, the execution of search warrants, and the use of confidential informants related to said investigations.

3.    As an FBI TFO, I am authorized to investigate violations of the laws of the United States, and to execute warrants issued under the authority of the United States.

4.    Through my investigations, my training and experience, and discussions with other law enforcement personnel, I have become familiar with the tactics and methods employed by the controlled substance traffickers to smuggle and safeguard controlled substances, to distribute controlled substances, and to collect and launder the proceeds from the sale of controlled substances.

5.    Your Affiant has received training in the investigation of drug trafficking and unlawful possession offenses and has worked with informants in the investigation of drug trafficking offenses. Your Affiant has authored and participated in the execution of numerous of search warrants in which controlled substances and drug paraphernalia were seized and is familiar with the street names of various drugs, including methamphetamine, fentanyl, heroin and other drugs. Your Affiant is also familiar with methods that are commonly used by drug dealers to package and prepare controlled substances for sale. In the course of Affiant's experience as a law enforcement officer, Affiant has arrested individuals for drug-related offenses.

## FACTS ESTABLISHING PROBABLE CAUSE

6.    The following information is based on an active law enforcement investigation, oral and written reports by other law enforcement officers, searches conducted by law enforcement agencies, physical surveillance, public records, database checks, consensual recordings (where applicable), and reports from coroner(s) and/or medical examiners, among other matters. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. It would be nearly impossible to include all known factual information

2

in this affidavit. Instead, your affiant has provided a general overview of the investigation and has set forth only the specific facts necessary to establish probable cause to support the issuance of a Summons for Trenten Lawrence DELKER (hereinafter "DELKER") based upon an Information charging DELKER with a violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2 (Distribution of Fentanyl Resulting in Death). Conversations and discussions below are set forth in substance unless noted. My interpretations of certain statements are set forth in parentheses or brackets and are based upon my knowledge of this investigation. Dates and times are approximate.

7.      On or about January 3, 2026, at 8:00 pm, the Bismarck Police Department was called to respond to an apartment on Iowa Lane for a welfare check. The callers were coworkers of JANE DOE who had not been heard from since approximately noon on January 2, 2026. When patrol officers arrived at the address, they knocked multiple times but received no answer at the door. The patrol officer contacted another individual who had recently resided at the location and who still had a key to the apartment. This individual allowed officers into the apartment. Inside, the officers located JANE DOE clearly deceased, lying face down on the floor in the kitchen. On the counter next to her, officers located drug paraphernalia and a small quantity of fentanyl powder.

8.      An autopsy was conducted on the body of JANE DOE by the Office of the North Dakota Forensic Medical Examiner on January 5, 2026. The Medical Examiner identified the cause of death to be "Opioid Poisoning Due to Use of Fentanyl." Post-mortem toxicology results identified a potentially toxic concentration of fentanyl with its metabolic by-products present. No blunt force or other injuries were noted. No other controlled substances or alcohol were noted.

9.      Your Affiant interviewed a source of information (hereinafter identified as "SOI1") during March 2026. SOI1 had been one of the last individuals with JANE DOE prior to her death. SOI1 said the fentanyl used by JANE DOE came from "Deken Trenten." SOI1 indicated SOI1 and JANE DOE were at another person's apartment who lives two blocks north of the Federal Courthouse in Bismarck. SOI1 indicated "Deken Trenten" lived about one block further north (Affiant Note: Your Affiant knows that Trenten DELKER resided at an apartment on Arikara Avenue, which is approximately one block north of the apartment belonging to SOI2 and SOI3 referred to below). SOI1 said that she was told by the homeowner that they obtained the fentanyl from "Deken Trenten." SOI1 believed JANE DOE had purchased a couple of hundred dollars of fentanyl that night (more than a point, and more than one use). However, SOI1 was unaware whether JANE DOE had fentanyl yet when she was dropped off at her apartment.

10.     Your Affiant interviewed the homeowner described by SOI1. That person (hereinafter identified as "SOI2") said SOI2 and SOI2's significant other had been acquiring fentanyl from DELKER. SOI2 met DELKER through SOI2's significant other's brother, who had met DELKER in prison. SOI2 identified where DELKER lived in Bismarck, which was nearby SOI2's residence. SOI2 indicated SOI2 did not conduct the hand-to-hand transactions with DELKER but was present when fentanyl was acquired from him. SOI2 explained SOI2's significant other did the hand-to-hand exchanges. SOI2 admitted SOI2 had been using fentanyl for about 5 – 6 months, beginning in November 2025, but that SOI2's significant other began using before SOI2 did. SOI2 and SOI2's significant other typically purchased fentanyl in points from DELKER but never acquired a gram together. Usually, they would buy $500 – 600 worth of fentanyl.

4

11.    Your Affiant separately interviewed SOI2's significant other (hereinafter referred to as "SOI3"). SOI3 indicated SOI3 began using drugs again after SOI2 became pregnant. On 1/2/2026, SOI1, SOI2, SOI3, and JANE DOE were all at SOI2 and SOI3's's apartment in Bismarck when JANE DOE asked if SOI3 could score drugs for her, and SOI3 agreed. SOI3 contacted DELKER via Facebook and arranged to purchase 2 points for $75. SOI3 went to DELKER and acquired the drugs, then returned to the apartment and gave the drugs to JANE DOE, who used the drugs with SOI1 and SOI2. About an hour later, JANE DOE asked SOI3 to score again and SOI3 contacted DELKER via Facebook again asking to purchase two more points for $75. JANE DOE provided the money for both purchases. SOI3 went and acquired the drugs from DELKER, returned to the apartment and gave them to JANE DOE. About 30 minutes later, JANE DOE, SOI1 and SOI2 left the apartment. SOI2 told SOI3 they went to JANE DOE's apartment, obtained some cat food, and SOI2 returned home. SOI3 learned of JANE DOE's death later.

12.    Based upon training and experience, Your Affiant knows that fentanyl (a/k/a "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide") is a Schedule II controlled substance.

13.    Based upon the foregoing, Your Affiant believes probable cause exists to support that Trenten Lawrence DELKER knowingly and intentionally distributed a mixture and substance containing a detectable amount of fentanyl (a/k/a "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide") to another person which controlled substance was later ingested by JANE DOE and its use by JANE DOE resulted in death to JANE DOE, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

Thus, your Affiant respectfully requests Your Honor and the Court to issue a Summons for Trenten Lawrence DELKER.

_Jeremy Seeklander_
TFO JEREMY SEEKLANDER
FEDERAL BUREA OF INVESTIGATION

Subscribed and sworn to before me via telephone or other reliable electronic means pursuant to Rule 4.1, FRCrimP, this _____17th_____ day of June, 2026.

CLARE R. HOCHHALTER
UNITED STATES MAGISTRATE JUDGE

6